IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

OLIVIA SKENANDORE,

       Plaintiff,

v.                                  No.  1:18-cv-00388-JHR-LF

FIP, LLC,

       Defendant.

**MOTION FOR DEFAULT JUDGMENT**

Plaintiff Olivia Skenandore, through counsel, moves the Court to enter default judgment against Defendant FIP, LLC.   Defendant deceived Ms. Skenandore into an illegal and unconscionable transaction in which she was obligated to repay $21,000 for a loan of $2,100.  To cover its tracks, Defendant disguised the loan as the sale of Ms. Skenandore's New Mexico pension benefits from her years of service as a special education teacher.   In the process, Defendant flouted state and federal laws governing consumer lending.

On June 14, 2018, the Clerk of the Court entered default against Defendant.  [Doc. 6] Defendant has not subsequently entered an appearance or moved to set aside default.  Pursuant to Fed. R. Civ. P. 55(b), the Court may now enter default judgment.  Plaintiff does not request a hearing on damages, as her claim is for a "sum certain or a sum that can be made certain by

Plaintiff requests the following relief:

1.  In the alternative, either:

    a.  All of the following:

        i.  Statutory damages of $2,000 pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1640(a)(2)(A);

        ii.  Statutory damages of $300 pursuant to the New Mexico Unfair Practices

Act ("UPA"), NMSA §57-12-10(B);

    iii.  Declaratory judgment that Defendant's contract with Plaintiff is void and uncollectable;

    iv.  Injunctive relief barring Defendant from making any efforts to collect on its loan and from reporting negative information about Plaintiff to any credit reporting agency; or

  b.  Actual damages of $18,900, for Defendant's violations of the TILA, 15 U.S.C. §1640(a)(1), the Unfair Practices Act, NMSA §57-12-10(B), and fraud, with UPA actual damages trebled for a total of $56,141, *id.*[1]; and

2. Statutory damages of $1,000 pursuant to the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §1693m(2)(A); and

3. Attorney's fees and costs, pursuant to the TILA, 15 U.S.C. §1640(a)(3), the EFTA, 15 U.S.C. §1693m(3); and the UPA, NMSA §57-12-10(C), reserving Plaintiff's ability to seek further attorney's fees and costs such as may be incurred in seeking and enforcing default judgment.

## I.  Factual Background

As a result of Defendant's default, the facts in Plaintiff's Complaint [Doc. 1] are taken as admitted. *United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). Plaintiff incorporates these facts by reference, and offers the following summary:

Plaintiff Olivia Skenandore is a 70-year-old retired special education teacher living in Albuquerque, New Mexico. Complaint ¶¶6, 15. She lives on a limited fixed income from the

New Mexico Educational Retirement Board ("NMERB") and from Social Security. *Id.* ¶16. In April of 2017, Ms. Skenandore needed money to meet basic necessities including car payments and groceries. *Id.* ¶17. On or about April 25, 2017, Ms. Skenandore performed an internet search for "loans" at the public library, which yielded the website of Defendant FIP, LLC. *Id.* ¶¶18-19.

Defendant FIP, LLC, is a Nevada limited liability company that does not have a license to engage in lending in New Mexico. *Id.* ¶¶10-12. On Defendant's website, Ms. Skenandore completed an application to receive a loan. *Id.* ¶20. As a condition of entering into the transaction, Defendant required Ms. Skenandore to authorize payments by means of preauthorized electronic funds transfer from her bank account. *Id.* ¶23. Defendant offered Ms. Skenandore a loan of $2,000, and stated that she would have 5 years to repay the $2,000. *Id.* ¶¶27-28. Ms. Skenandore provided an electronic signature, but Defendant did not provide her with any documents relating to the transaction. *Id.* ¶¶30-31. On April 27, 2017, Defendant deposited $2,100 into Ms. Skenandore's bank account, and in July, she made her first payment of $350. *Id.* ¶¶32-33.

In early 2018, Ms. Skenandore received an IRS form 1099-B purporting to reflect "proceeds from Broker and Barter Exchange Transactions." *Id.* ¶34. Confused, Ms. Skenandore requested all documents from her transaction, and Defendant sent her a document entitled "FIP LLC Purchase and Sale Agreement" ("Agreement") which it claimed that she had signed. A copy is attached as Exhibit 1. *Id.* ¶¶35-36. Ms. Skenandore was shocked to see that in return for money she had been loaned, the Agreement stated that she was required to repay **$21,000** over the course of 5 years. *Id.* ¶37. Defendant had never before told Ms. Skenandore the terms of the

---

[1] Plaintiff sets forth her calculations below.

loan, including the total payment obligation and the Annual Percentage Rate, and had misled her about her repayment obligation.  *Id.* ¶38.

To disguise the unconscionable terms of its loan, Defendant deceptively misstated the nature of the transaction in the Agreement, claiming that it is not a loan, but instead a sale of "a portion of the funds derived from certain of [Ms. Skenandore's] Pension Payments."  *Id.* ¶40. This is false.  Under New Mexico law, NMERB benefits cannot be sold.  NMSA §22-11-42.  In reality, Ms. Skenandore's transaction with Defendant was an extension of credit, 15 U.S.C. §1602(f), not the sale of an asset.  *Id.* ¶42.  Disguising the transaction gave Defendant a justification not to make the disclosures required by the TILA.  *Id.* ¶43.  Had Defendant made the required disclosures, the face of its contract would have disclosed that its loan of $2,100 bore an unconscionable Finance Charge of **$18,900** and an Annual Percentage Rate ("APR") of **191.8%**!  *Id.* ¶45.

In addition to violating federal law, Defendant failed to comply with New Mexico's substantive law concerning payday loans.  *Id.* ¶48.   Under New Mexico's Small Loan Act, Defendant's loan to Ms. Skenandore qualified as a "payday loan" because Defendant required a debit authorization (electronically withdrawing funds from the borrower's bank account).  NMSA §58-15-2(E) and (H) (prior to amendments effective January 1, 2018).  *Id.* ¶49.   The Small Loan Act, with the "payday loan" provisions in effect at the time of the transaction, provides simple and explicit rules for payday lenders, including a usury limit on the fees charged for a payday loan, of $15.50 per $100 plus $.50 per loan.  NMSA §58-15-33(A) through (D).  *Id.* ¶50.   In other words, New Mexico law limited the Finance Charge in Ms. Skenandore's loan to $279.50.  **Defendant charged 68 times the legal rate**!  *Id.* ¶51.

Ms. Skenandore was damaged by Defendants' misconduct, including being fraudulently obligated to an illegal and unconscionable contract.  *Id*. ¶53.   Defendant's conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith.  Defendant has been subject to numerous lawsuits and enforcement actions by state attorneys general, and yet it has persisted in its illegal conduct.  *Id*. ¶54.

## II.  Plaintiff's Claims for Relief

In her Complaint, Plaintiff brought claims against Defendant pursuant to the TILA, the EFTA, the UPA, and for fraud.  [Doc. 1]  As a result of Defendant's default, Ms. Skenandore is now entitled to relief pursuant to all of these claims.  As set forth herein, Ms. Skenandore requests different forms of relief in the alternative.  As her preferred form of relief, Ms. Skenandore requests that the Court declare the loan void and uncollectable, enjoin further collection and adverse credit reporting, and award statutory damages totaling $3,300.  However, if the Court should decide not to award injunctive and declaratory relief, Ms. Skenandore requests actual damages of $18,900 under the TILA, the UPA, and for fraud, trebled as set forth below, plus statutory damages of $1,000 under the EFTA.  These requests are made in the alternative because should the Court award injunctive and declaratory relief barring further collection, recovery of the as-yet uncollected illegal finance charge ($18,900) would be duplicative.  However, in the absence of injunctive and declaratory relief, Plaintiff is entitled to actual damages in the amount of the illegal finance charge that she will still be obligated to repay.

### a.  TILA

Congress passed the TILA in 1968 to guarantee the accurate and meaningful disclosure of the costs of consumer credit.  15 U.S.C. §1601.  The TILA sets forth rules for disclosure of

uniform terms in credit transactions between "consumers" and "creditors" like Plaintiff and Defendant.  Complaint ¶¶7, 13, 42.  Among other things, the TILA requires disclosure of the Finance Charge, 15 U.S.C. §1638(a)(3), and Annual Percentage Rate, 15 U.S.C. §1638(a)(4). Disclosures are required to be made "clearly and conspicuously" on the face of the loan contract, 15 U.S.C. §1632(a), and to be provided to the borrower at the time of consummation in a form the borrower can keep, 12 C.F.R. §1026.17.

Here, Defendant failed entirely to make the disclosures required by the TILA.  This prevented Ms. Skenandore from learning that she was obligated to pay the outrageously abusive Finance Charge of $18,900, and that her loan bore an APR of 191.8%.

The TILA provides remedies for failure to disclose required credit terms, including the Finance Charge and APR.  15 U.S.C. §1640.  Prevailing plaintiffs are entitled to actual damages, 15 U.S.C. §1640(a)(1), or statutory damages of up to $2,000, 15 U.S.C. §1640(a)(2)(A). Statutory damages are calculated as double the Finance Charge, here $18,900, up to the cap of $2,000.  *Id.*  Here, Ms. Skenandore's preferred remedy is statutory damages, but in the event that the Court elects to award actual damages, Ms. Skenandore is entitled to $18,900, the amount of the undisclosed Finance Charge in the loan.  Ms. Skenandore relied on Defendant's statements about the terms of the loan, which completely omitted the Finance Charge.  Complaint ¶¶28-29, 38.  Had Ms. Skenandore been informed of the Finance Charge, she would not have entered into the transaction.  *Id.* ¶29.

### b.  EFTA

The EFTA was enacted to protect "individual consumer rights" in electronic systems to transfer funds.  15 U.S.C. §1693(b).  Under the EFTA, it is illegal to "condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund

transfers." 15 U.S.C. §1693k.  Here, Defendant violated the EFTA by conditioning its loan upon repayment from Ms. Skenandore's account.  Complaint ¶¶21-23.

The EFTA provides for actual or statutory damages for violations.  15 U.S.C. §1693m. Here, Plaintiff requests only statutory damages of $1,000.  15 U.S.C. §1693m(a)(2)(A).  Under the factors set forth in the EFTA, such an award is justified.   15 U.S.C. §1693m(b)(1). Defendant's noncompliance with the law is frequent and persistent, as demonstrated by numerous lawsuits and enforcement actions by state attorneys general.  Complaint ¶54; *see, e.g.*, Harrison v. FIP, LLC, No. 3:18-cv-00109-MMH-PDB (M.D. Fla., filed January 16, 2018) (asserting violations of the EFTA); *Chiasson v. Future Income Payments, LLC*, No. 6:16-cv-01198-CEM-DAB (M.D. Fla. filed July 1, 2016) (asserting violations of the EFTA); *Lewis v. Future Income Payments*, LLC, No. 6:16-cv-551-ORL-41-TBS (M.D. Fla., filed March 31, 2016) (asserting violations of the EFTA).  Moreover, Defendant's violations are willful, as evidenced by its deceptive contract, designed to disguise the extension of credit, which is subject to the EFTA, as the sale of an asset, which is not.

### c.  UPA

"[T]he UPA is a law that prohibits the economic exploitation of others . . . empowering courts to stop and preclude those who prey on the desperation of others from being rewarded with windfall profits.  *State ex rel. King v. B&B Inv. Group, Inc*., 2014-NMSC-024, ¶ 34, 329 P.3d 658, 671. The UPA prohibits "unfair or deceptive trade practices," which are defined in relevant part as "a false or misleading oral or written statement . . . knowingly made . . . that may, tends to or does deceive or mislead any person."  NMSA §57-12-2(D).  The UPA applies to both misrepresentations and material omissions.  *Salmeron v. Highlands Ford Sales, Inc*., 271 F.

Supp. 2d 1314, 1318 (D.N.M. 2003).  The UPA provides a non-exhaustive list of unfair or

deceptive trade practices, which includes:

> (11)  making false or misleading statements of fact concerning the price of goods
> or services . . .
> (14)  using exaggeration, innuendo or ambiguity as to a material fact or failing to state a
> material fact if doing so deceives or tends to deceive.

The UPA also prohibits "unconscionable trade practices," which it defines to include a

practice in the extension of credit that "results in a gross disparity between the value received by

a person and the price paid."  NMSA §57-12-2(E).  "Substantive unconscionability is found

**where the contract terms themselves are illegal**, contrary to public policy, or grossly unfair."

*B & B Inv. Grp., Inc.*, 2014-NMSC-024 at ¶ 32, 329 P.3d at 670 (emphasis added).

Here, Defendant engaged in both unfair and deceptive trade practices and unconscionable

trade practices.  First, Defendant engaged in an unfair and deceptive trade practice by deceiving

Ms. Skenandore about the terms of her loan, disguising it as the sale of an asset in order to

circumvent lending laws.  Complaint ¶¶36-40.  Defendant omitted the exorbitant Finance Charge

and APR that would have led Ms. Skenandore to decline the loan.  *Id*. ¶¶39, 43-45.

Defendant engaged in an unconscionable trade practice by making illegal "payday loans"

under New Mexico law.  Under New Mexico's Small Loan Act, Defendant's loan to Ms.

Skenandore qualified as a "payday loan" because FIP required a debit authorization.  NMSA

§58-15-2(E) and (H) (prior to amendments effective January 1, 2018).  The Small Loan Act

imposes a limit on the fees that may be charged for a payday loan of $15.50 per $100 plus $.50

per loan.  NMSA §58-15-33(A) through (D).  New Mexico law limited the Finance Charge in

Ms. Skenandore's loan to $279.50, very substantially less than the $18,900 imposed.  Complaint

¶¶48-51.  State and Federal Courts have found loan charges above the legal limit to constitute

unconscionable trade practices under the UPA.  *B&B Inv. Group, Inc*., 2014-NMSC-024, 329 P.3d 658; *Daye v. Cmty. Fin. Loan Serv. Centers, LLC*, 280 F. Supp. 3d 1222 (D.N.M. 2017).

The UPA provides for actual damages or statutory damages of $100, both trebled for willful violations.  NMSA §57-12-10(B).  Here, Ms. Skenandore's preferred remedy is statutory damages of $300 for Defendant's willful violation.  However, if the Court elects to award actual damages, the amount of such damages is 18,620.50 ($18,900 minus the permissible fee of $279.50).  Actual damages under the UPA are duplicative of actual damages under the TILA and for fraud.  Therefore, Plaintiff requests $18,900 in actual damages plus $37,241 in multiple damages under the UPA ($18,650 times 2), for a total of $56,141.

The UPA also gives the Court the authority to grant injunctive relief.  NMSA §57-12-10(A).  Here, Plaintiff would be irreparably injured if Defendant were permitted to continue collecting from her and to report her account as delinquent to credit reporting agencies.  There is no adequate remedy at law for this injury.  Therefore, Plaintiff requests that the Court declare that the loan in void and uncollectable and grant injunctive relief barring Defendant from making any efforts to collect on its loan and from reporting negative information about Plaintiff to any credit reporting agency.

### d.  Fraud

To establish a claim for fraud, the plaintiff must demonstrate the following elements: First, the plaintiff must show that there was a "misrepresentation of fact."  *Williams v. Stewart*, 2005-NMCA-061, ¶ 34, 137 N.M. 420, 429, 112 P.2d 281; UJI 13-1633 NMRA.  Material omissions are also actionable.  *Robertson v. Carmel Builders Real Estate*, 2004-NMCA-056, ¶ 31, 135 N.M. 641, 651, 92 P.3d 653 (Ct. App. 2003) (emphasis added).  The second element of fraud is "either knowledge of the falsity of the representation or recklessness on the part of the

party making the misrepresentation[.]"  *Williams*, 2005-NMCA-061, ¶ 34, 137 N.M. at 429, 112 P.2d at 290.  Third, the plaintiff seeking to prove fraud must demonstrate "intent to deceive and to induce reliance on the misrepresentation[.]"  *Williams*, 2005-NMCA-061, ¶ 34, 137 N.M. at 429, 112 P.2d at 290.  Finally, the fourth element of fraud is "detrimental reliance on the misrepresentation."  *Williams*, 2005-NMCA-061, ¶ 34, 137 N.M. at 429, 112 P.2d at 290.  In cases involving omissions, this element is satisfied by demonstrating proof that a representation was material.  *Azar v. Prudential Ins. Co. of Am*., 2003-NMCA-062, ¶72, 133 N.M. 669, 68 P.3d 909, 930 (N.M. Ct. App. 2003) (internal quotation marks and citation omitted).

Here, Defendant intentionally deceived Ms. Skenandore about the terms of her loan and omitted crucial information about its cost, including the Finance Charge and APR.  Complaint ¶¶28-29, 31, 36-38, 40.  Ms. Skenandore relied on these representations and would not have entered into the transaction had she known the truth.  Complaint ¶39.  Ms. Skenandore was damaged in the amount of the finance charge, $18,900.

Actual and punitive damages are available for fraud.  *Stewart v. Potter*, 1940-NMSC-052, 44 N.M. 460, 104 P.2d 736, 739.  As noted above, Ms. Skenandore's actual damages for fraud are duplicative of her actual damages under the TILA and UPA.  Ms. Skenandore does not seek punitive damages for fraud, electing instead her treble damages pursuant to the UPA.  *Hale v. Basin Motor Co.,* 1990–NMSC–068, ¶¶ 20–21, 110 N.M. 314, 795 P.2d 1006.

### e.  Attorney's Fees and Costs

The TILA, the EFTA, and the UPA all mandate the award of attorney's fees and costs to prevailing parties.  15 U.S.C. §1640(a)(3) (TILA); 15 U.S.C. §1693m(3) (EFTA); and NMSA §57-12-10(C) (UPA).  Here, Plaintiff's attorney's fees are $3,144.38, including gross receipts tax, and her taxable costs are $487.  *See* Exhibit 2 (Declaration of Nicholas H. Mattison, with

billing statement attached).  Plaintiff bills at $250 per hour, which rate has been approved by the District of New Mexico.  *Daye v. Cmty. Fin. Loan Serv. Centers, LLC*, No. 1:14-cv-00759-JB-SCY (D.N.M., order dated March 29, 2018).  Plaintiff requests that the Court also permit Plaintiff to seek additional attorney's fees and costs associated with collecting the default judgment.  *Vukadinovich v. McCarthy*, 59 F.3d 58 (7th Cir. 1995).

### III. Conclusion

Wherefore, Plaintiff respectfully requests that the Court enter default judgment against Defendant FIP, LLC, and award the relief requested herein.


Respectfully submitted,

*/s/Nicholas H. Mattison*
Nicholas H. Mattison
Feferman, Warren & Mattison
300 Central Avenue SW, Suite 2000 West
Albuquerque, New Mexico 87102
(505) 243-7773
nmattison@nmconsumerwarriors.com


### CERTIFICATE OF SERVICE

Plaintiff's counsel certifies that he sent a copy of this Motion to Defendant's registered agent, via certified mail return receipt requested, on July 31, 2018.

*/s/Nicholas H. Mattison*
Nicholas H. Mattison

11