IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

OLIVIA SKENANDORE,

      Plaintiff,

v.                                                  1:18-cv-00388-MV-LF

FIP, LLC,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
ON MOTION FOR DEFAULT JUDGMENT**

THIS MATTER comes before the Court on plaintiff Olivia Skenandore's Motion for Default Judgment, filed on July 31, 2018. Doc. 7. Pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, the Honorable District Judge Martha Vázquez referred this matter to me for a recommended disposition. Doc. 12. Having reviewed the briefing and relevant case law, I find that Ms. Skenandore's motion is well-taken and recommend that the Court GRANT it, and that the Court enter a default judgment in favor of Ms. Skenandore as outlined below.

## I.      Background

Plaintiff Olivia Skenandore is a 70-year-old retired special education teacher who lives in Albuquerque, New Mexico. In April 2017, Ms. Skenandore searched for an internet loan to help her make her car payment and buy groceries. She secured a loan in the amount of $2100 from FIP, LLC ("FIP"), a Nevada limited liability company. FIP did not provide her with any documents when she entered into the loan. She thought the loan would be paid off after six months of $350 payments. FIP did not provide her with any documents pertaining to her loan

until she requested them in early 2018. It was only then that she learned that the terms of the loan required her to repay $21,000 over the course of five years.

On April 25, 2018, Ms. Skenandore filed her complaint in this Court, seeking the following relief: (1) a declaratory judgment that her loan with FIP is void and uncollectable; (2) injunctive relief preventing FIP from attempting to collect on the loan and from reporting negative information about her to any credit reporting agency; (3) actual, statutory, and/or punitive damages; and (4) reasonable attorney's fees and costs. Doc. 1 at 8. Ms. Skenandore served FIP on May 15, 2018. Doc. 3 at 2. FIP's answer was therefore due by June 5, 2018. Fed. R. Civ. P. 12(a)(1)(A)(i) (answer due 21 days after being served with the summons and complaint). The time to plead or otherwise respond to the complaint has not been extended by agreement of the parties or by order of the Court. To date, FIP has failed to appear, plead, or otherwise defend in this suit.

On June 13, 2018, Ms. Skenandore filed a Praecipe Requesting Clerk to Enter Default. Doc. 5. On June 14, this Court entered a Clerk's Entry of Default as to FIP. Doc. 6. On July 31, 2018, Ms. Skenandore filed this Motion for Default Judgment. Doc. 7.

## II. Default Judgment

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After the clerk has entered default, and a plaintiff applies to a court for default judgment, a district court may enter a default judgment. *See* Fed. R. Civ. P. 55(b).

"[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over

2

the subject matter and the parties." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). This allows the Court "to determine that it has the power to enter the default judgment." *Id.*; *see also Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983) (holding that a default judgment is not appropriate if the court does not have jurisdiction over the subject matter and the defendant).

After determining it has jurisdiction over the subject matter and the defendant, a court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-CV-02445-LTB-MJW, 2008 WL 793606, *1 (D. Colo. Mar. 22, 2008); *see also Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) ("Once default is entered, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.") (internal quotation marks and citation omitted). Upon a motion for default judgment, a district court accepts as true all well-pled allegations in a complaint, except those related to proving damages. *See U.S. v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006) (unpublished). The Court must determine whether the allegations contained in plaintiff's complaint are sufficient to state a claim for relief. To state a claim for relief, the complaint must contain sufficient factual matter, accepted as true, to show that the claim is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* A pleading that offers mere legal conclusions, or a recitation of the elements of a cause of action, is insufficient. *Id.* A trial court is vested with broad discretion in deciding whether to enter a default judgment. *See Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987).

## A. Jurisdiction

The Court finds that it has the subject matter and personal jurisdiction required to enter a default judgment against FIP. Ms. Skenandore's complaint brings claims under the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA"), the federal Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*. ("EFTA"), the New Mexico Unfair Practices Act, N.M. STAT. ANN. § 57-12-1 *et seq*. ("UPA"), and for fraud. Thus, the Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

A district court does not have personal jurisdiction over a defendant if the defendant was not served. *See Venable*, 721 F.2d at 300. A plaintiff must serve a defendant within 90 days after the complaint is filed. *See* FED. R. CIV. P. 4(m). Ms. Skenandore timely served FIP: she filed her complaint on April 25, 2018 and served defendant on May 15, 2018. Docs. 1, 3. In addition, Ms. Skenandore properly served FIP under the federal rules, which allow service of a corporation "by delivering a copy of the summons and of the complaint to any agent authorized by law to receive service of process." FED. R. CIV. P. 4(h)(1)(B). Ms. Skenandore had a process server deliver the summons and complaint to Amber Rose Aparicio, the administrative assistant for FIP's registered agent ISI, Inc. at 321 W. Winnie Lane Ste. 104, Carson City, NV, 89703. Doc. 3 at 2.[1] Thus, Ms. Skenandore properly served FIP under Rule 4.

The Court may only exercise personal jurisdiction over a non-resident defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is

---

[1] The Court was unable to verify the name and address of FIP's registered agent through the Nevada Secretary of State, as its website shows that FIP dissolved effective August 8, 2018, and FIP's agent resigned as of September 4, 2018. *See* Nevada Secretary of State website, https://www.nvsos.gov/sosentitysearch/corpActions.aspx?lx8nvq=uCe4jTX2Bw9Sl8%252f9L9l6fw%253d%253d&CorpName=FIP+LLC (last visited March 4, 2019).

located," FED. R. CIV. P. 4(k)(1)(A), and if the exercise of personal jurisdiction comports with

the due process clause of the Fourteenth Amendment. *United States v. Botefuhr*, 309 F.3d 1263,

1271 (10th Cir. 2002). New Mexico's long-arm "statute extends the jurisdictional reach of New

Mexico courts as far as constitutionally permissible." *Tercero v. Roman Catholic Diocese*, 2002-

NMSC-018, ¶ 6, 132 N.M. 312, 316, 48 P.3d 50, 54 (2002). Consequently, the Court "need not

conduct a statutory analysis apart from the due process analysis." *Marcus Food Co. v.

DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (internal citation and quotation omitted).

The Due Process Clause requires the Court to conduct a two-step analysis of personal

jurisdiction. First, the Court must examine whether the non-resident defendant has "minimum

contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Second,

if the defendant has sufficient contacts, the Court asks whether exercising personal jurisdiction

over the defendant is consistent with "traditional notions of fair play and substantial justice." *Id.*

The "minimum contacts" requirement of due process may be met by showing the

existence of either general or specific jurisdiction. *Trierweiler v. Croxton & Trench Holding

Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996); *see also Helicopteros Nacionales de Columbia, S.A.

v. Hall*, 466 U.S. 408, 414 (1984).

> General jurisdiction is based on an out-of-state defendant's "continuous and
> systematic" contacts with the forum state, . . . and does not require that the claim
> be related to those contacts. Specific jurisdiction, on the other hand, is premised
> on something of a *quid pro quo*: in exchange for "benefitting" from some
> purposive conduct directed at the forum state, a party is deemed to consent to the
> exercise of jurisdiction for claims related to those contacts.

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (internal

citations omitted). Thus, "[s]uch contacts may give rise to personal jurisdiction over a non-

resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out

of particular forum-related activities." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

A court may assert specific jurisdiction "if the defendant has purposefully directed its activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations and quotations omitted). In contract cases, the Tenth Circuit has framed this inquiry as "whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov,* 514 F.3d at 1071. Regardless of how the question is framed, the defendant must have purposely established minimum contacts with the forum state such that it "should reasonably anticipate being haled into court" there. *Burger King,* 471 U.S. at 474.

### a. Minimum Contacts/Specific Jurisdiction

Here, FIP "purposefully availed" itself of the privilege of conducting activities and consummating a transaction in New Mexico, such that it is subject to specific jurisdiction in New Mexico.[2] Ms. Skenandore is a resident of New Mexico who searched the internet for "loans" and found FIP's website. Doc. 1 ¶¶ 6, 18, 19.[3] She completed an online application for a $1000 loan. *Id.* ¶ 20. FIP asked Ms. Skenandore for information about her pension with the New Mexico Educational Retirement Board and for the account and routing numbers for her New

---

[2] The Court notes that the "FIP LLC Purchase and Sale Agreement" between Ms. Skenandore and FIP states that the contract is governed by the laws of the State of California. Doc. 1-1 at 6, ¶ 7.7. A choice-of-law analysis becomes relevant only if the Court determines that the parties actually agreed to be bound by the choice-of-law provision. *Sheffer v. Samsung Telecommunications Am., LLC*, No. CV 13-3466-GW AJWX, 2013 WL 7158039, at *4 (C.D. Cal. Oct. 21, 2013). In this case, Ms. Skenandore alleges that she never saw the agreement and did not agree to its terms; she therefore is not bound by this choice of law provision.

[3] All facts are taken from Ms. Skenandore's complaint, Doc. 1, unless otherwise specified.

Mexico bank account. *Id.* ¶¶ 16, 21, 22, 24. As a condition for the loan, FIP required Ms. Skenandore to preauthorize electronic funds transfer payments from her New Mexico bank account. *Id.* ¶¶ 23, 24. FIP's website instructed Ms. Skenandore to call FIP, which she did. *Id.* ¶¶ 25, 26. She also faxed FIP a copy of her driver's license and provided an electronic signature. *Id.* ¶ 30. FIP did not provide Ms. Skenandore with any documents when the transaction was consummated. *Id.* ¶ 31. FIP deposited the loan into Ms. Skenandore's New Mexico bank account, and withdrew payments from the same. *Id.* ¶¶ 32, 33. Through these activities, FIP purposefully directed its activities toward a resident of New Mexico, and it reasonably could have anticipated being haled into court here.

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 476.

In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), the court explained its approach as follows:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.

The Tenth Circuit has not taken a definitive position on the *Zippo* sliding-scale approach.[4] *Shrader*, 633 F.3d at 1242 n.5. It has, however, cited it with approval. *See Quik Payday, Inc. v. Stork,* 549 F.3d 1302, 1312 (10th Cir. 2008) (discussing one-to-one commercial exchanges via the Internet and citing with approval *Zippo*, 952 F. Supp. at 1124) ("Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction [by the foreign jurisdiction over that entity] is proper. Different results should not be reached simply because business is conducted over the Internet."); *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999) (citing *Zippo* for the "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet"); *see also Villanueva v. Account Discovery Systems, LLC*, 77 F. Supp. 3d 1058, 1069 (D. Colo. 2015) (finding that an out-of-state third-party debt collector's withdrawal of debt payments from a Colorado bank account over a period of nine months established general—not just specific—jurisdiction in Colorado).

b. **Traditional Notions of Fair Play and Substantial Justice**

The Court also finds that exercising jurisdiction over FIP does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. In considering these notions, courts evaluate the following factors:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

---

[4] The New Mexico Court of Appeals has approved the *Zippo* sliding-scale approach in jurisdictional cases based on Internet contacts. *Sublett v. Wallin*, 2004-NMCA-089, ¶ 29, 136 N.M. 102, 109, 94 P.3d 845, 852.

*Dudnikov*, 514 F.3d at 1080 (internal citation and quotation omitted). The Court addresses each of these factors in turn. First, the Court's exercise of jurisdiction over FIP would not create an undue burden on FIP. "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern. . . . [I]n this age of instant communication, . . . and modern transportation, the burdens of litigating in a distant forum have lessened." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212–13 (10th Cir. 2000) (internal citations and quotations omitted). Requiring FIP to travel from Nevada to defend this action in New Mexico would not create an undue burden.

Second, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998). Here, Ms. Skenandore lives in New Mexico, she entered into the contract in New Mexico, her bank account is in New Mexico, and FIP electronically withdrew funds from her bank account located in New Mexico. Accordingly, New Mexico has an interest in providing a forum for Ms. Skenandore to seek redress for her alleged injuries.

The third factor "hinges on whether the [p]laintiff may receive convenient and effective relief in another forum," *Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004), and the fourth factor asks "whether the forum state is the most efficient place to litigate the dispute," *id.* at 1080 (internal quotations and citation omitted). In this case, Ms. Skenandore could receive effective, albeit less convenient, relief in Nevada. However, New Mexico is the most efficient forum to litigate this dispute because Ms. Skenandore resides in New Mexico, she entered into the contract in New Mexico, and FIP is out of state and has not responded to Ms. Skenandore's

complaint or to her motion for default judgment. Therefore, the third and fourth factors weigh in favor of exercising personal jurisdiction over FIP in New Mexico.

The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states." *Id*. As discussed further below, the TILA, the EFTA, and the UPA are all designed to protect individual consumers. Exercising personal jurisdiction over FIP where the individual consumer was injured furthers the policy interests of all states. Thus, after considering all the relevant factors, the Court finds that exercising jurisdiction over FIP does not offend "traditional notions of fair play and substantial justice," and the Court may exercise personal jurisdiction over FIP as a non-resident defendant. The Court has both subject matter and personal jurisdiction to enter default judgment against FIP.

### B. Allegations in the Complaint

Having concluded that it has the power to enter a default judgment, the Court next must determine whether the well-pled allegations of the Complaint, if true, state a claim for relief. *See* 10A ALAN C. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIVIL, Rule 55 § 2688.1 (4th ed. 2018); *Dallas Buyers Club, LLC v. Cordova*, 81 F. Supp. 3d 1025, 1032 (D. Colo. 2015). The Court accepts as true all well-pled allegations in the complaint. *See Craighead*, 176 F. App'x at 924 ("The defendant by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits. *Dallas Buyers Club*, 81 F. Supp. 3d at 1032.

### a. Violations of the TILA

One of the purposes of the TILA is to "assure a meaningful disclosure of credit terms . . . to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a).  Congress enacted the TILA  "to aid unsophisticated consumers and to prevent creditors from misleading consumers as to the actual costs of financing."  *In re Ramirez*, 329 B.R. 727, 731 (D. Kan. 2005).  The TILA sets forth rules for disclosure of uniform terms in credit transactions between "creditors" and "consumers."  The TILA defines a "creditor" as

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C § 1602(g).  The TILA defines a "consumer" as

> the party to whom credit is offered or extended [and who] is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

15 U.S.C. § 1602(i).

The TILA requires a creditor to make numerous disclosures.  *See* 15 U.S.C. § 1638(a).  Among these, the TILA requires a creditor to disclose the finance charge, 15 U.S.C. § 1638(a)(3), and the annual percentage rate ("APR"), 15 U.S.C. §1638(a)(4).  The finance charge and the APR must be "clearly and conspicuously" disclosed on the face of the loan contract.  15 U.S.C. § 1632(a).  The disclosures must be made "before consummation of the transaction," and must be provided to the consumer "in a form that the consumer may keep."  12 C.F.R. §§ 1026.17(a), (b).

TILA violations are measured by a strict liability standard, which means that "even minor or technical violations impose liability upon the creditor."  *In re Ramirez*, 329 B.R. at 731–32.

"The consumer-borrower can prevail in a TILA suit without showing that he or she suffered any actual damage as a result of the creditor's violation."  *Id.* at 732.

The Court finds that the well-pled allegations of the complaint, if true, state a claim for relief under the TILA.  Ms. Skenandore alleges sufficient facts to show that she is a "consumer" as defined by 15 U.S.C. § 1602(i):  she is a 70-year-old retired special education teacher who took out the loan at issue to make her car payment and pay for groceries.  Doc. 1 ¶¶ 7, 9, 15, 17.

Ms. Skenandore also alleges sufficient facts to show that FIP is a "creditor" as defined by 15 U.S.C § 1602(g):  FIP advertised loans through the internet, and made this loan in the regular course and scope of its business; the loan offered to Ms. Skenandore was to be repaid with regular payments over five years; FIP has faced numerous lawsuits and actions by state attorney's general for these same types of loans.  Doc. 1 ¶¶ 13, 14, 18, 19, 27, 28, 54.

Ms. Skenandore alleges sufficient facts to show that the transaction at issue was an extension of credit (loan) and was therefore subject to the disclosure requirements of the TILA.  Ms. Skenandore applied for a loan over the Internet.  *Id.* ¶¶ 18–33.  She provided her pension information to FIP with the understanding that her pension would serve as collateral for the loan.  *Id.* ¶ 21.  At FIP's direction, Ms. Skenandore called to discuss the loan.  *Id.* ¶¶ 25–29.  FIP advised Ms. Skenandore that it would lend her $2000.  *Id.* ¶ 27.  FIP told her that she would have five years to repay the loan in payments of $350.  *Id.* ¶ 28.  Ms. Skenandore replied that she would not need five years to repay the loan, since the $2000 loan should be repaid after six months of $350 payments.  *Id.* ¶ 29.  At the time the loan was made, FIP did not provide Ms. Skenandore with any documents.  *Id.* ¶ 31.  On April 27, 2017, FIP deposited $2100 into Ms. Skenandore's bank account.  *Id.* ¶ 32.

Beginning in July 2017, FIP began deducting $350 per month from Ms. Skenandore's bank account. *Id.* ¶ 33. In early 2018, Ms. Skenandore received an IRS form 1099-B, "purporting to reflect the 'proceeds from Broker and Barter Exchange Transactions' in the amount of $2,100." *Id.* ¶ 34. Because she did not understand this form, she contacted FIP and requested all the documents from her transaction. *Id.* ¶ 35. FIP sent her a document called a "FIP LLC Purchase and Sale Agreement," which it claimed she had signed. *Id.* ¶ 36. FIP "deceptively misstated the nature of the transaction in the Agreement, claiming that it is not a loan, but instead a sale of 'a portion of the funds derived from certain of [Ms. Skenandore's] Pension Payments.'" *Id.* ¶ 40. However, under New Mexico law, New Mexico Educational Retirement benefits cannot be sold. N.M. STAT. ANN. § 22-11-42(A).

Ms. Skenandore alleges sufficient facts to show that FIP failed to make the disclosures mandated by the TILA. FIP failed to disclose the finance charge and the APR "clearly and conspicuously" on the face of the loan contract when it was consummated in a form she could keep. Doc. 1 ¶¶ 43, 44. In fact, FIP did not provide her with any documents at all when the transaction was consummated. *Id.* ¶ 31. Ms. Skenandore did not learn the terms of the loan until she requested and received all the documents from her transaction, in early 2018. *Id.* ¶¶ 35, 38. FIP never told her the terms of the loan, the total payment obligation or the APR, and FIP misled her about her repayment obligations. *Id.* ¶ 38. It was not until early 2018 that Ms. Skenandore learned that, in return for $2100 she had been loaned, the Agreement stated that she was required to repay $21,000 over the course of 5 years. *Id.* ¶ 37.

The well-pled allegations in Ms. Skenandore's complaint, if true, state a claim for relief under the TILA.

### b. Violations of the EFTA

The EFTA was enacted to protect "individual consumer rights" in electronic systems to transfer funds. 15 U.S.C. §1693. Under the EFTA, it is illegal to "condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers." 15 U.S.C. § 1693k(1).

The Court finds that the well-pled allegations in Ms. Skenandore's complaint, if true, state a claim for relief under the EFTA. Ms. Skenandore alleges that a "[a]s a condition of entering into the transaction, FIP required Ms. Skenandore to authorize payments by means of preauthorized electronic funds transfer from her bank account." Doc. 1 ¶ 23. She further alleges that FIP asked for the account number and routing number of her bank account. *Id.* ¶ 22. Ms. Skenandore was required to provide this information as part of her loan application. *See id.* ¶¶ 18−25. And, beginning on July 3, 2017, FIP withdrew the first monthly payment of $350 from Ms. Skenandore's bank account. *Id.* ¶ 33. These facts establish a claim under the EFTA.

### c. Violations of the New Mexico UPA

The UPA provides remedies for individuals damaged by "unfair, deceptive, or unconscionable trade practices." *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 30, 147 N.M. 583, 591, 227 P.3d 73, 81. To state a claim under the UPA for an unfair or deceptive trade practice, a complaint must allege:

> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

*Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 5, 142 N.M. 437, 439, 166 P.3d 1091, 1093 (citing N.M. STAT. ANN. § 57-12-12(D)). "The gravamen of an unfair trade practice is a

misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 17, 125 N.M. 748, 754, 965 P.2d 332, 338.

A deceptive trade practice under the UPA includes both misrepresentations and material omissions. *Salmeron v. Highlands Ford Sales, Inc.*, 271 F. Supp. 2d 1314, 1318 (D.N.M. 2003). The UPA provides a non-exhaustive list of unfair or deceptive trade practices, which includes:

(11) making false or misleading statements of fact concerning the price of goods or services . . .

(14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive.

N.M. STAT. ANN. §§ 57-12-2(D)(11), (14).

The UPA also prohibits "unconscionable trade practices." N.M. STAT. ANN. § 57-12-2(E). Under the UPA, unconscionable trade practices include:

act[s] or practice[s] in connection with . . . the extension of credit in the collection of debts that to a person's detriment:

(1) take[ ] advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

(2) result[ ] in a gross disparity between the value received by a person and the price paid.

N.M. STAT. ANN. § 57-12-2(E). Accordingly, a trade practice can be procedurally unconscionable, under § 57-12-2(E)(1), or substantively unconscionable, under § 57-12-2(E)(2). *See Cordova v. World Finance Corp.*, 2009-NMSC-021, ¶ 21, 146 N.M. 256, 262, 208 P.3d 901, 907 ("The doctrine of contractual unconscionability can be analyzed from both procedural and substantive perspectives."). Ms. Skenandore alleges substantive unconscionability. Doc. 7 at 8. "Substantive unconscionability is found where the contract terms themselves are illegal, contrary

to public policy, or grossly unfair." *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 32, 329 P.3d 658, 670.

### i. Unfair and Deceptive Trade Practices

Ms. Skenandore argues that FIP engaged in unfair and deceptive trade practices by deceiving her about the terms of her loan, and by disguising it as the sale of an asset in order to circumvent lending laws. Doc. 7 at 8 (citing Doc. 1 ¶¶ 36–40). The Court finds that the well-pled allegations in Ms. Skenandore's complaint, if true, state a claim for unfair and deceptive trade practices under the UPA. Ms. Skenandore's complaint contains the following well-pled allegations: FIP did not disclose the terms of the loan at all at the time the loan was made and misled her about her repayment obligations. Doc. 1 ¶ 38. FIP did not provide her with any documents on April 25, 2017, when the loan was consummated. *Id.* ¶¶ 18, 31. Ms. Skenandore did not receive any loan documents until early 2018. *Id.* ¶ 36. She only received these documents after calling to request them after she received an IRS 1099-B form which she did not understand—purporting to show the "proceeds from Broker and Barter Exchange Transactions" in the amount of $2100. *Id.* ¶¶ 34, 35. In response to her request for documents, FIP sent her a copy of a document entitled "FIP LLC Purchase and Sale Agreement," which it claimed she had signed. *Id.* ¶ 36. Only after receiving this document did Ms. Skenandore discover that "in return for $2,100 she had been loaned, the Agreement stated that she was required to repay $21,000 over the course of 5 years." *Id.* ¶ 37. Ms. Skenandore alleges that "[h]ad FIP made the required disclosures, the face of its contract would have disclosed that its loan of $2,100 bore an unconscionable Finance Charge of $18,900 and an APR of 191.8%!" *Id.* ¶ 45. Ms. Skenandore alleges that she would not have entered into the loan had she known the terms. *Id.* ¶ 39. She

further alleges that FIP "omitted the exorbitant Finance Charge and APR that would have led Ms. Skenandore to decline the loan." Doc. 7 at 8 (citing to Doc. 1 ¶¶ 39, 43–45).

The well-pled allegations in Ms. Skenandore's complaint, if true, state a claim for relief by showing a deceptive trade practice under the UPA. Ms. Skenandore has alleged sufficient facts to show that FIP made misrepresentations and material omissions in connection with its loan to her, which she would not have entered into had she known the true terms. *Salmeron*, 271 F. Supp. 2d at 1318.

### ii. Substantively Unconscionable Trade Practices

Ms. Skenandore also alleges that FIP engaged in a substantively unconscionable trade practice by making "illegal 'payday loans' under New Mexico law." Doc. 7 at 8 (citing Doc. 1 ¶¶ 48−51). Under New Mexico's Small Loan Act, FIP's loan to Ms. Skenandore qualified as a "payday loan" because FIP required a debit authorization (electronically withdrawing funds from the borrower's bank account). *Compare* N.M. STAT. ANN. § 58-15-2(E) (defining installment loan) *with* N.M. STAT. ANN. § 58-15-2(H) (defining payday loan)[5] (eff. Nov. 1, 2007 through

---

[5] Under the Small Loan Act, the term "payday loan":

> (1) includes any advance of money or arrangement or extension of credit whereby the licensee, for a fee, finance charge or other consideration:
> > (a) accepts a dated personal check or debit authorization from a consumer for the specific purpose of repaying a payday loan;
> > (b) agrees to hold a dated personal check or debit authorization from a consumer for a period of time prior to negotiating or depositing the personal check or debit authorization; or
> > (c) pays to the consumer, credits to the consumer's account or pays another person on behalf of the consumer the amount of an instrument actually paid or to be paid pursuant to the New Mexico Small Loan Act of 1955; but
> (2) does not include:
> > (a) an overdraft product or service offered by a banking corporation, savings and loan association or credit union; and
> > (b) installment loans.

Dec. 31, 2017); *see also B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 5, 329 P.3d at 663; Doc. 1 ¶ 49. The Small Loan Act in effect at the time of FIP's loan to Ms. Skenandore imposed a limit on the fees that it could charge for a payday loan: $15.50 per $100 plus $.50 per loan. N.M. Stat. Ann. §§ 58-15-33(A)–(D) (eff. Nov. 1, 2007 through Dec. 31, 2017).

Ms. Skenandore asserts that if FIP had complied with the Small Loan Act, the maximum amount they could have charged on Ms. Skenandore's loan was $279.50.[6] Doc. 1 ¶ 51. Ms. Skenandore alleges that FIP charged an unconscionable finance charge of $18,900, or "68 times the legal rate!"[7] *Id.* Thus, the well-pled allegations of the complaint, if true, state a claim for relief as a "substantially unconscionable" trade practice under the UPA. *See Daye v. Cmty. Fin. Loan Serv. Centers, LLC*, 280 F. Supp. 3d 1222, 1256 (D.N.M. 2017) (holding that "contractual terms requiring borrowers to pay interest on payday loans are substantively unconscionable, because they violate the Small Loan Act") (citing *B & B Inv. Grp. Inc.*, 2014-NMSC-024, ¶ 32, 329 P.3d at 670 (stating that "[s]ubstantive unconscionability is found" when a contract term is illegal as well as when a term is contrary to public policy or grossly unfair) and *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 20, 188 P.3d 1215, 1221 ("Substantive unconscionability

---

N.M. Stat. Ann. §§ 58-15-2(H)(1), (2) (eff. Nov. 1, 2007 through Dec. 31, 2017). An installment loan is "a loan that is to be repaid in a minimum of four successive substantially equal payment amounts . . . with a period of no less than one hundred twenty days to maturity," for which the lender does not "require[ ], as a condition of making the loan, the use of post-dated checks or debit authorizations for repayment of that loan." N.M. Stat. Ann. § 58-15-2(E) (eff. Nov. 1, 2007 to Dec. 31, 2017).

[6] This amount appears to be based on the net of $1800 to Ms. Skenandore ($15.50 x 18 = $279.00 + .50 finance charge = $279.50). *See* Doc. 1-1 at 8 indicating that Purchase Price to Seller was $2100, "including $300 deduction for Set-up Fee." In the complaint, however, Ms. Skenandore stated that $2100 was deposited into her bank account. Doc. 1 ¶ 32. Even if the charges were based on $2100, the maximum allowable charge would have been $326.00.

[7] If the allowable charge was $326.00, see footnote 6 *supra*, this would be approximately 58 times the legal rate.

relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair.")).

### C. Damages

In her motion for default judgment, Ms. Skenandore asks for the following relief:

1. In the alternative, either:

    a. **All of the following**:

        i. Statutory damages of $2,000 pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1640(a)(2)(A);
        ii. Statutory damages of $300 pursuant to the New Mexico Unfair Practices Act ("UPA"), NMSA § 57-12-10(B);
        iii. Declaratory judgment that Defendant's contract with Plaintiff is void and uncollectable;
        iv. Injunctive relief barring Defendant from making any efforts to collect on its loan and from reporting negative information about Plaintiff to any credit reporting agency; **or**

    b. Actual damages of $18,900, for Defendant's violations of the TILA, 15 U.S.C. § 1640(a)(1), the Unfair Practices Act, NMSA §57-12-10(B), and fraud, with UPA actual damages trebled for a total of $56,141 . . .; **and**

2. Statutory damages of $1,000 pursuant to the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693m(2)(A); **and**

3. Attorney's fees and costs, pursuant to the TILA, 15 U.S.C. § 1640(a)(3), the EFTA, 15 U.S.C. § 1693m(3); and the UPA, NMSA § 57-12-10(C), reserving Plaintiff's ability to seek further attorney's fees and costs such as may be incurred in seeking and enforcing default judgment.

Doc. 7 at 1–2 (emphases added).  Having reviewed Ms. Skenandore's motion and the relevant law, I recommend granting the relief requested in paragraphs 1(a), (2) and (3) above.[8]

When entering a default judgment, the Court may conduct a hearing to obtain an accounting, determine the amount of damages, establish the truth of any allegation by evidence,

---

[8] Because none of the relief requested in paragraph 1(a) is dependent on Ms. Skenandore's claim for fraud, the Court does not need to analyze Ms. Skenandore's fraud claim.

or investigate any matter. FED. R. CIV. P. 55(b)(2). The Court may enter a default judgment without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Venable*, 721 F.2d at 300. A hearing is not necessary on the relief requested in paragraphs 1(a) and 2 because plaintiff's preferred relief consists of statutory damages, along with declaratory and injunctive relief. These damages are capable of mathematical computation, and a hearing is therefore not necessary. *See Marcus Food Co.*, 671 F.3d at 1172 ("Rule 55 of the Federal Rules of Civil Procedure, which governs default judgments, does not require that the district court receive evidence on the claimed damages amount before entering a default judgment; rather, the Rule simply allows the district court to conduct a hearing if it believes that additional investigation or evidence is necessary." (citing FED. R. CIV. P. 55(b)(2) and noting that the district court "may conduct hearings")). However, a hearing is necessary on Ms. Skenandore's request for attorney's fees. *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985) ("attorney's fees [in a default judgment] may not be awarded without a hearing to determine the amount").

### a. The TILA

Ms. Skenandore asks for statutory damages of $2000 for FIP's TILA violations. Doc. 7 at 1 (citing 15 U.S.C. § 1640(a)(2)(A)(i) (creditor "in the case of an individual action [is liable for] twice the amount of any finance charge in connection with the transaction")); *see also Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 59 (2004) (holding that the recovery cap of $2000 in 1640(a)(2)(A)(ii) also applies to cases governed by 1640(a)(2)(A)(i)). Because the finance charge in FIP's contract is $18,900, Ms. Skenandore's statutory damages are capped at $2000. I therefore recommend granting Ms. Skenandore's request for $2000 in statutory damages for the TILA violations.

### b. The UPA

In connection with her claim under the New Mexico UPA, Ms. Skenandore asks for statutory damages and injunctive relief. Doc. 7 at 9; Doc. 1 ¶¶ 62, 63. Ms. Skenandore asks for statutory damages of $300. Doc. 7 at 9. A plaintiff prevailing on an action under the UPA may "recover actual damages or the sum of one hundred dollars ($100), whichever is greater." N.M. STAT. ANN. § 57-12-10(B). This amount may be trebled for willful violations. *Id.* Because Ms. Skenandore alleged a plausible claim that FIP's actions were deceptive and substantively unconscionable, and that such violations were willful, I recommend granting Ms. Skenandore's request for treble damages in the amount of $300.

Ms. Skenandore also asks the Court to grant injunctive relief under the UPA. Doc. 7 at 9; Doc. 1 ¶ 63. Under the UPA, "[a] person likely to be damaged by an unfair or deceptive trade practice or by an unconscionable trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." N.M. STAT. ANN. § 57-12-10(A). A plaintiff seeking a permanent injunction must satisfy the following four-factor test: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007). First, for all of the reasons set forth above, Ms. Skenandore has shown actual success on the merits. Second, the Court agrees with Ms. Skenandore that there is no adequate remedy at law for her injury, and she will be irreparably injured if FIP is allowed to "continue collecting from her and . . . report[ing] her account as delinquent to credit reporting agencies." Third, the balance of hardships favors granting the injunction. Fourth, the Court can discern no public interest that would be harmed by

granting the requested injunctive relief. I therefore recommend that the Court grant injunctive relief barring FIP from attempting to collect on its loan or from reporting negative information about Ms. Skenandore to any credit reporting agency.

### c. Declaratory Judgment

In her complaint, Ms. Skenandore asks the Court to "[a]ward declaratory judgment that [her] loan with FIP is void and uncollectable." Doc. 1 ¶ 67. Under the Declaratory Judgment Act: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989) (quoting *Public Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)).

In deciding whether declaratory relief is appropriate, this Court should ask the following: "Will a declaration of rights, under the circumstances, serve to clarify or settle legal relations in issue? Will it terminate or afford relief from the uncertainty giving rise to the proceeding?" *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (internal citation omitted). If both questions can be answered affirmatively, the Court should hear the case for declaratory relief. *Id.* "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (internal citation and quotation omitted). I find that a declaration as to Ms. Skenandore's obligations and rights under

the loan contract will settle the legal relations at issue in this case and will afford relief from the uncertainty giving rise to this proceeding. I therefore find that declaratory relief is appropriate in this case.

As discussed above, the contract between Ms. Skenandore and FIP is substantively unconscionable. "Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova,* 2009-NMSC-021, ¶ 21, 146 N.M. at 262, 208 P.3d at 907. A contract may be invalidated for substantive unconscionability alone. *See Fiser*, 2008-NMSC-046, ¶ 22, 144 N.M. at 470, 188 P.3d at 1221 (invalidating an arbitration clause due to "an overwhelming showing of substantive unconscionability"). Based on the loan agreement's substantive unconscionability under the UPA, I recommend that the loan agreement between Ms. Skenandore and FIP be invalidated and declared void and uncollectable.

### d. The EFTA

Ms. Skenandore asks for statutory damages of $1000 for FIP's EFTA violations. Doc. 7 at 7; Doc. 1 ¶ 7. The EFTA allows the Court to award "an amount not less than $100 nor greater than $1,000." 15 U.S.C. § 1693m(a)(2)(A). In an individual action, the Court must consider the following factors: "the frequency and persistence of noncompliance, the nature of such noncompliance, and the extent to which the noncompliance was intentional." 15 U.S.C § 1693m(b)(1).

After considering these factors, the Court finds $1000 in statutory damages is appropriate. Ms. Skenandore argues that FIP's "noncompliance with the law is frequent and persistent, as demonstrated by numerous lawsuits and enforcement actions by state attorneys general." Doc. 7 at 7. None of the cases cited by Ms. Skenandore, however, resulted in findings that FIP violated the EFTA. Instead, each of the cases cited was settled and voluntarily

dismissed.[9]  Settlement is not proof of noncompliance.  However, the Court is persuaded that

FIP's actions were willful, "as evidenced by its deceptive contract, designed to disguise the

extension of credit, which is subject to the EFTA, as the sale of an asset, which [it] is not."  *Id.*

Because I find FIP's noncompliance with the EFTA was intentional, I recommend awarding Ms.

Skenandore $1000 for FIP's EFTA violations.

### e.  Attorney's Fees and Costs

Finally, Ms. Skenandore asks for attorney's fees and costs.  Attorney's fees and costs are

available to the prevailing party under the TILA, the UPA, and the EFTA.  *See*  15 U.S.C

§ 1640(a)(3) (TILA); N.M. STAT. ANN. § 57-12-10(C) (UPA); 15 U.S.C. § 1693m(3) (EFTA).

Ms. Skenandore asks for $3144.38 in attorney's fees, which includes gross receipts tax, and

taxable costs of $487.  Doc. 7 at 10; Doc. 7-2 at 1–5.  The Court held a hearing on March 5, 2019

to determine whether the requested fees and costs are reasonable.

At the hearing, the Court heard testimony and argument from Nicholas H. Mattison, Ms.

Skenandore's attorney.  The Court also accepted Mr. Mattison's declaration and billing records

into evidence, *see* Doc. 7-2, as well as an affidavit submitted in another case that discusses the

prevailing rates of attorney's fees in New Mexico, *see Daye v. Cmty. Fin. Loan Serv. Centers,*

*LLC*, No. 14cv759 JB-SCY, Doc. 169-5 (affidavit of Philip B. Davis) (D.N.M. Dec. 30, 2017).

Mr. Mattison bills at $250 per hour, and requests reimbursement for 11.7 hours.  *See* Doc. 7-2 at

2.  This Court previously found this hourly rate for Mr. Mattison's services to be reasonable.  *See*

*Daye*, No. 14cv759 JB-SCY, Doc. 173 (order awarding attorney's fees) (D.N.M. March 29,

---

[9] *See Harrison v. FIP, LLC*, No. 3:18-cv-00109-MMH-PDB, Doc. 21 (voluntary dismissal)
(M.D. Fla. May 4, 2018); *Chiasson v. Future Income Payments, LLC*, No. 6:16-cv-01198-CEM-
DAB, Doc. 16 (voluntary dismissal) (M.D. Fla. Sept. 9, 2016); *Lewis v. Future Income
Payments*, LLC, No. 6:16-cv-551-ORL-41-TBS, Doc. 13 (voluntary dismissal) (M.D. Fla. June
29, 2016).

2018).  Further, according to Philip Davis, an expert on attorney's fee litigation, Mr. Mattison's

hourly rate of $250 per hour, given his more than ten years of specialized experience in

Consumer litigation, is fair and reasonable for a lawyer of his skill and experience in the New

Mexico legal community.  *Daye*, No. 14cv759 JB-SCY, Doc. 169-5 at 7.  Thus, I find that Mr.

Mattison's billing rate is fair and reasonable.

I also find the requested number of hours to be reasonable.  Mr. Mattison billed a total of

11.7 hours for initiating this case to bringing it to conclusion.  Doc. 7-2 at 3−4.  If anything, the

number of hours spent on this case is low, and Mr. Mattison testified that he attempted to keep

his hours as low as possible.  I therefore recommend approving the  requested attorney's fees in

the amount of $3144.38 ($2925.00 in fees and $219.38 in gross receipts tax).  Ms. Skenandore

also requests $487 in costs—$400 in filing fees, and $87 for service of process—which also is

reasonable.  Doc. 7-2 at 4.  I recommend approving these costs as well.

Finally, Ms. Skenandore asks the Court to permit her to "to seek additional attorney's

fees and cost associated with collecting the default judgment."  Doc. 7 at 11.  I recommend that

the Court grant this request.  *See Felts v. Accredited Collection Agency, Inc.*, No. 08cv755

WJ/WDS, Doc. 39 at 2, 2011 WL 13268852, at *1 (D.N.M. May 23, 2011) (finding that "well

settled precedent recognizes that a reasonable attorney's fee award under numerous [other fee-

shifting] federal statutes includes postjudgment costs of collection").

## III.    Conclusion

I recommend that the Court grant Ms. Skenandore's Motion for Default Judgment (Doc.

7) and award $3300 in statutory damages, declaratory judgment, injunctive relief, and $3631.38 in

attorney's fees and costs:

1. Statutory damages of $2000 pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1640(a)(2)(A);

2. Statutory damages of $300 pursuant to the New Mexico Unfair Practices Act ("UPA"), N.M. STAT. ANN. § 57-12-10(B);

3. Declaratory judgment that FIP's contract with Ms. Skenandore is void and uncollectable;

4. Injunctive relief barring FIP from making any efforts to collect on its loan and from reporting negative information about Ms. Skenandore to any credit reporting agency

5. Statutory damages of $1000 pursuant to the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §1693m(2)(A); and

6. Attorney's fees and costs of $3631.38, pursuant to the TILA, 15 U.S.C. § 1640(a)(3), the EFTA, 15 U.S.C. § 1693m(3); and the UPA, N.M. STAT. ANN. §57-12-10(C), reserving Ms. Skenandore's ability to seek further attorney's fees and costs such as may be incurred in seeking and enforcing default judgment.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**

---

Laura Fashing
United States Magistrate Judge